UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY L. MOORE,

      Plaintiff,

vs.                                          CIVIL NO.: 05-CV-60180-DT

COMMISSIONER OF                HON. SEAN F. COX
SOCIAL SECURITY,                MAG. JUDGE WALLACE CAPEL, JR.

      Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is recommended that the Court grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Motion for a Sentence Four Remand consistent with this Report.

### II.     REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income [SSI] and disability insurance benefits [DIB]. Plaintiff filed for SSI on September 20, 2001 (TR 48-50), and DIB on April 10, 2003 (TR 62),[1] alleging that she has been disabled and unable to work since September 20, 2001,[2] due to heart, asthma, high blood pressure, diabetes, chronic cough, and urinary problems (TR 277-80). The Social Security Administration [SSA] denied SSI benefits initially on April 5, 2002.[3] (TR 281-84). A de

---

[1] She signed her DIB application on April 14, 2003. (TR 50).

[2] On her SSI application, Plaintiff indicated that her disability began September 10, 2001. (TR 277).

[3] Plaintiff's DIB application was filed subsequently and apparently considered in conjunction with the SSI application by the ALJ. (TR 19).

1

novo hearing was held on March 2, 2004, before Administrative Law Judge [ALJ] John A. Ransom. (TR 290-306). In a decision dated March 23, 2004, the ALJ found that Plaintiff could perform some light work. (TR 19-26). Accordingly, Plaintiff was found not disabled (TR 19). On June 1, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (TR 6-8). Plaintiff then made this appeal to district court.

### A.     PLAINTIFF'S TESTIMONY

Plaintiff testified that she was born January 29, 1950, and was fifty-four at the time of the hearing. (TR 293). She stated that she is five feet, eight and a half inches tall, but with her back problems she has lost a half inch of her height. (TR 303). She stated that she weighs 310 pounds and is single. Id.

She stated that she completed the eleventh grade and attended a Job Corps Program, in 1971, where she received a certificate in food service. (TR 293). She stated that she last worked as a housekeeper from February 3, 2000, to August 18, 2001. (TR 293-94). She reported that her current income consists of FIA she receives in exchange for raising her two grandsons. (TR 304).

Plaintiff indicated that she stopped working due to her back and asthma. (TR 294). She explained that she has a herniated disc that is pressing on a nerve in her back. Id. She stated that she could no longer make beds, dust, sweep, vacuum, or mop as required by her housekeeping position. Id. She stated that she also had a large laundry cart that she had to push around and move in and out of the elevator. Id.

She stated that she lives in a three-bedroom, two-story house and she has to sleep upstairs. (TR 294-95). She stated that she has to walk up stairs twice a day, and cannot use the stairs more often because of her back problems. (TR 295). She stated that her daughter and grandsons live with her. Id. She stated that her daughter helps her out, although she also has her own place. Id. She then

indicated that she had a deceased daughter and raised two grandsons, ages six and eight. Id. It is noted by the undersigned that the record is somewhat unclear about Plaintiff's deceased daughter. She stated that she sometimes has to attend conferences at her grandson's school, but not often. Id. Further, she indicated that although the school is only two blocks from her home, she cannot walk there on her own. (TR 295-96). She explained that she tried to walk there a couple months prior to the hearing, but she was unable to reach the school, and she had to ask a neighbor to take her home. (TR 296). Plaintiff stated that she does not have a license, nor does she drive. (TR 303).

Plaintiff testified that she cannot stand for long periods of time, so, when she cooks, she either uses a chair or prepares the food quickly. (TR 296). She stated that she can do the dishes, but only if she is sitting, and if there are too many dishes, she has to stop. Id. She stated that her daughter or grandson help the other children get dressed, or they put the clothes in her room, and she makes sure they get dressed. (TR 296-97). She also stated that the children actually help her get dressed. (TR 297). For example, she stated that they put on her socks and bring her towels to wash her face. Id.

She stated that after she washes her face in the morning, she takes her medication and goes back to bed. Id. She stated that she stays in bed until noon and gets up to take more medication. Id. She stated that she has hard chairs at home and can only sit for about ten to twenty minutes before she has to get up and lean on the sink due to back pain. Id. She explained that when she sits her legs go numb. (TR 297-98). She stated that it varies day to day, but she can stand from five to ten minutes at a time before her back pain sets in. (TR 297). She stated that she is most comfortable in bed or sitting on something soft. (TR 298). She stated that after she takes her medication at noon, she has lunch and might watch a little television, but then goes back to bed because her medication makes her drowsy. Id.

Plaintiff summarized:

> Most of the day I'm in the bed because the kids, the grandkids all leave home at 7:45 a.m. by that time I be done took my medicine, had my little breakfast so I'm back in bed so I, I can and then at 12:00 I take my medicine. I might sit up and watch a little TV on the side of the bed and then I kill [sic] over. Then I go to sleep and I sometime [sic] I wake up just in before they get out of school at 3:40 p.m. and then I, I muscle myself up to go downstairs or either my daughter's there with me, she let's them in because they have - - they live on Glenwood but they basically moved in with em to help me out. If - - the twins are 15 and another 14 and my grandkids 8 and 6 so they basically do everything just about for me.

(TR 298-99). She stated that she sometimes needs help from her grandson to walk up stairs. (TR 299). She stated that she went grocery shopping the day before the hearing, using "the cart as a crutch." Id. She stated that while she was shopping, she started sweating, so she just paid for what she had and left the store. (TR 299-300). She stated that she gets sweaty and suffers from anxiety attacks. (TR 300). She explained that she is frustrated and was trying to do something for herself. (TR 299-300). She stated that she is upset that she can longer do things, because she once was an independent person. (TR 300).

Plaintiff stated that she also went to bingo a few weeks prior to the hearing at the urging of a "lady." (TR 300-01). However, her legs and feet started going numb, and she wanted to return home after about forty minutes. (TR 301). Nevertheless, she stayed until the game was over. Id. She also testified that she was recently invited to a birthday party, but she did not attend because she was concerned that she would get there and immediately need someone to take her home because she could not sit too long. Id.

She also testified that she has trouble sleeping at night and that on a good night she might sleep for four hours. Id. She has pain on her left side when she rolls over due to neuropathy and arthritis. (TR 301-02). Plaintiff stated that she cannot sleep on her back either because of the pain, so she tosses and turns until her medication takes effect. (TR 302). She also uses two nebulizers for her asthma,

one twice a day and the other as needed. Id. She stated that she has not recently been hospitalized. Id.

Plaintiff testified that she did have some heart tests performed recently and her prescription for Imdur was subsequently increased. Id. She stated that she suffers drowsiness as a side effect from her medications as well as itching. (TR 303).

### B. MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[4]

### C. VOCATIONAL EXPERT'S TESTIMONY

Mary Williams, a vocational expert [VE], testified at the hearing. (TR 304-05). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience was limited to the extent testified to and fully credible. (TR 304). The VE testified that such a claimant would not be capable of Plaintiff's past work or any other light or sedentary work due to the "need[] to lie in bed most of the day for pain relief." (TR 304-05).

The ALJ posed a second hypothetical assuming the claimant was capable of performing light work with "a sit/stand option, no repetitive bending, twisting or turning. No crawling, squatting, kneeling or climbing and a controlled environment free from dust, smoke and fumes." Id. The VE testified that such a claimant would be capable of the following jobs: inspector, 6,000 positions; order clerk, 2,410 positions; and self-service gas station attendant, 3,200 positions. (TR 305). The VE testified that her testimony conformed with the Dictionary of Occupational Titles [DOT] and companion publications. Id. Plaintiff's counsel declined to question the VE. Id.

---

[4]See Subpart E, infra, page 6.

**D.     ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from "diabetes, asthma, back and knee pain, obesity and angina, impairments that are severe within the meaning of the Regulations" but that she does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 20, 25). The ALJ found Plaintiff's testimony not to be credible. (TR 22, 25). He determined that Plaintiff had the RFC to perform some light work. (TR 22-25). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 25-26).

**E.     ANALYSIS**

Plaintiff advances several claims in her Motion for Summary Judgment. Plaintiff's Motion requests a Sentence Four Remand[5] and argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly consider Plaintiff's obesity in combination with her other impairments; and (2) the evidence does not support a residual functional capacity [RFC] for light work.[6] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence.[7] The matter is now ready for decision.

---

[5] Sentence four of § 405(g) reads as follows: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2000).

[6] Plaintiff's Motion for Summary Judgment and Brief filed November 11, 2005, (hereinafter "Plaintiff's Brief") at pages 3-9; Plaintiff's Reply to Defendant's Motion for Summary Judgment filed December 6, 2005 (hereinafter "Plaintiff's Reply").

[7] Defendant's Motion for Summary Judgment and Brief filed November 25, 2005, (hereinafter "Defendant's Brief") at pages 10-17.

**1.     Standard of Review**

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2005). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

**a.     Obesity and Combination of Impairment**

Plaintiff argues that the ALJ failed to take Plaintiff's obesity into account when determinating whether there was a combination of impairments that left Plaintiff disabled pursuant to Social Security Ruling [SSR] 02-01p.[8] Plaintiff weighs 310 pounds and is five feet, eight inches tall.[9] This Court recognizes that obesity can cause a person to be disabled, especially when in concert with other factors. Johnson v. Sec'y of Health and Human Servs., 794 F.2d 1106, 1112-14 (6th Cir. 1986).

---

[8] Plaintiff's Brief at pages 3-6; Plaintiff's Reply at pages 1-3.

[9] Plaintiff's Brief at page 4 (Plaintiff inadvertently wrote "210" pounds in her initial pleading); Defendant's Brief at page 7; Plaintiff's Reply at page 1.

"In evaluating the evidence regarding appellant's impairments we note that in this circuit they must be viewed in combination." Mowery v. Heckler, 771 F.2d 966, 971 (6th Cir. 1985). Further, "[d]isability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result." Id. (citing Hurst v. Schweiker, 725 F.2d 53 (6th Cir.1984); Allen v. Califano, 613 F.2d 139 (6th Cir.1980)). In addition, "[w]hen multiple impairments are involved, the assessment of RFC reflects the restrictions resulting from all impairments (both severe and not severe impairments). This assessment is based on all relevant evidence pertaining to RFC consistent with appropriate clinical and laboratory findings," according to SSR 86-8. Titles II and XVI: The Sequential Evaluation Process, 1986 WL 68636, at *5.

Defendant argues that "the ALJ directly addressed Plaintiff's obesity and made an individualized assessment when he explicitly concluded that Plaintiff's obesity was severe (TR 20, 25)."[10] However, the RFC determination follows the ALJ's determination of the severity of any given impairment. Both parties and the ALJ agree that Plaintiff's obese state "obviously aggravated her condition." (TR 22).[11]

Nonetheless, the Sixth Circuit held in Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987), that

> the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to "a combination of impairments" in deciding that Mr. Gooch did not meet the "listings." It is clear that Mr. Gooch's pulmonary impairments were considered collectively, moreover, because the ALJ specifically found that these "impairments" (plural), which the ALJ characterized as "severe," did not prevent Mr. Gooch from returning to his former work.

---

[10]Defendant's Brief at page 7.

[11]Plaintiff's Brief at page 4; Defendant's Brief at page 8.

In the present case, the ALJ also specifically stated that he considered the impairments "singly or in combination," (TR 20), and in his findings that he considered the "medically determinable impairments" (plural). (TR 25).

Further, Plaintiff admits that she is not arguing that her combined impairments equal a listing.[12] Defendant argues that Plaintiff points to no functional loss regarding obesity in combination with other impairments.[13]

Plaintiff cannot simply argue that she is disabled because the ALJ failed to consider certain evidence; she must point to that evidence and explain, in this case, what limitations result from that impairment. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Further, a thorough review of the record does not demonstrate a functional loss greater than that found by the ALJ. See Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) ("Secretary is correct in asserting that although the physicians and psychologists diagnosed a severe, chronic condition, the examination results do not document functional debilitation.") Plaintiff's Reply Brief does cite the following notes of record to show functional loss:

    a. Ambulates with a guarded gait secondary to Chronic Back Pain and Radiculopathy (Tr. 223).
    b. Cannot stand more than ten minutes (Tr. 229).
    c. Ambulates with a limping gait (Tr. 251).
    d. Gait is guarded secondary to pain (Tr. 237).
    e. Unable to continue with the cardiac stress test due to leg fatigue (Tr. 138).
    f. Shortness of breath with walking less than a block (Tr. 145).

---

[12]Plaintiff's Reply at page 2.

[13]Defendant's Brief at page 7.

   g. Has neuropathy significant enough that she could only feel five out of ten areas tested by monofilament on the bottom of her foot (Tr. 152) (see Exhibit A).[14]

Plaintiff then argues that her limitations are an inability to walk or stand six hours of an eight hour workday, which is required by light work.[15]  Thus, the issue turns on the ALJ's assessment of Plaintiff's RFC.

### b.     Light RFC

"[An RFC assessment] is not a decision on whether [a claimant is] disabled, but is used as the basis for determining the particular types of work [a claimant] may be able to do despite [her] impairment(s)."  20 C.F.R. §§ 404.1545(a), 416.945(a).  Indeed, the claimant has the initial burden of establishing medical impairments that preclude the performance of past relevant work.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  However, to make a nondisability finding at step four, the ALJ is required to review the claimant's "[RFC] and the physical and mental demands of the work [the claimant] has done in the past."  20 C.F.R. §§ 404.1520(e), 416.920(e).

This task requires a determination of the claimant's "[RFC] for work activity on a regular and continuing basis," which necessarily includes consideration of the claimant's "ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, handling and the evaluation of other physical functions."  20 C.F.R. §§ 404.1545(b), 416.945(b).  The results of this assessment determine the claimant's ability to perform the exertional demands of sustained work, which may be categorized as sedentary, light, medium, heavy, or very heavy.  SSR 96-9P, 1996 WL 374185, at *2 (S.S.A. July 2, 1996).  Prior to such categorization, however, an ALJ must set out a function-by-function evaluation to accurately determine a claimant's RFC.  (A failure to make a

---

[14] Plaintiff's Reply at page 3.

[15] Plaintiff's reply at page 3.

function-by-function assessment of the limitations of restrictions could result in the adjudicator overlooking some of limitations or restrictions). Id. at *3. The ALJ must then determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). This includes making an assessment of the claimant's pertinent work activities, which entails discussion of the nature and exertional requirements of tasks performed. 20 C.F.R. §§ 404.1545(a), 404.1565(b), 416.945(b), 416.965(b). Finally, the ALJ must determine whether the claimant has the ability to meet her prior job requirements based on her current capabilities. 20 C.F.R. §§ 404.1520(e), 404.1560(b), 416.920(e), 416.960(b).

The undersigned recognizes that SSR 02-01p states that "we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." 2000 WL 628049, at *7.[16] Plaintiff does not argue that the ALJ failed to include certain limitations in the RFC; rather, Plaintiff argues that "[e]ven with restrictions of a sit/stand option, no repetitive bending, twisting, crawling, etc., SSA cannot escape that the record demonstrat[es] an inability to stand/walk six out of an eight hour work day required by light work."[17] The undersigned is baffled by Plaintiff's argument. It appears that the

---

[16]The undersigned recognizes that SSR 02-01p also states that "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea. The combined effects of obesity with other impairments may be greater than might be expected without obesity." 2000 WL 628049, at *6. However, Plaintiff does not raise the issue of fatigue. Further, she does not challenge the ALJ's credibility analysis relating to Plaintiff's allegations regarding fatigue as detailed in her testimony or as described in her daily activity logs. (TR 82-84, 88, 106-11, 297-99).

[17]Plaintiff's Reply at page 3. See also Plaintiff's Brief at page 8, where Plaintiff also argues that
> [t]here is no articulation as to how the ALJ arrived at a light RFC when evidence two years after the DDS evaluation shows an increase in severity of symptoms which should naturally result in a reduced capacity especially anything that involves standing or walking be it musculoskeletal or cardiac in nature. To the ALJ's credit he did limit

11

argument for functional loss is simply the inability to stand/walk six hours, but a sit/stand option would accommodate same.

The ALJ did not find that Plaintiff could perform all light work; rather, he specifically stated that "the claimant's exertional limitations do not allow her to perform the full range of light work." (TR 25). It is noted that in the RFC within the ALJ's decision that he stated Plaintiff could "stand and/or walk about 6 hours in an 8-hour workday;" however, this limitation is immediately followed by "sit about 6 hours in an 8-hour workday." (TR 23). Obviously with the added sit/stand option, the ALJ's meaning becomes clear. The ALJ's RFC does not require Plaintiff to stand or walk for six hours each work day, because she can sit at her option.

Further, it bears repeating that the ALJ asked the VE to assume Plaintiff "could perform light work, she'd require a sit-stand option, no repetitive bending, twisting or turning. No crawling, squatting, kneeling or climbing and a controlled environment free from dust, smoke and fumes." (TR 305). The VE testified that a significant number of light jobs existed assuming same. Id. Plaintiff did not challenge the hypothetical nor the VE response and declined to question the VE. Id. Therefore, the RFC for a limited range of light work is supported by substantial evidence.

## III. CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Defendant's Motion for Summary Judgment, and **DENY** Plaintiff's Motion for a Sentence Four Remand consistent with this Report.

---

Ms. Moore to a sit/stand option with no repetitive bending, twisting, turning, no crawling, squatting, kneeling or climbing. However despite these exertional limitations the most obvious incorrect limitation is the ability to walk/stand six hours out of an eight hour work day required by light work.

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation, they may serve and file specific, written objections within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

> s/Wallace Capel, Jr.
> **WALLACE CAPEL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

**Date:**  July 24, 2006

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>July 24, 2006</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
<u>James A Brunson and Lewis M. Seward,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):
<u>Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606</u>.

<u>s/James P. Peltier</u><br>
United States District Court<br>
Flint, Michigan 48502<br>
810-341-7850<br>
E-mail: pete_peltier@mied.uscourts.gov